UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Rose Mary Smith, | ) | Civil Action No.: 4:19-cv-000205-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Andrew M. Saul, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Rose Mary Smith seeks judicial review, pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF No. 24]. Plaintiff filed objections to the R&R, and the Commissioner filed a reply. [ECF No. 25; ECF No. 28]. This Court now issues the following Order.

### Factual Findings and Procedural History

Smith filed an application for DIB on November 20, 2014. Smith alleges she is unable to work due to back pain, neck and leg pain, and carpal tunnel syndrome. [Tr. at 86]. The R&R adequately sets forth Smith's medical evidence as provided for in the record. Smith's medical records establish extensive medical treatment over a long period of time for her back pain, including injections, as well as treatment related to carpal tunnel syndrome. She also has been diagnosed with hypertension and been treated for diabetes mellitus. Within the R&R, the Magistrate Judge provides a detailed explanation of Smith's

medical history since she suffered from a work-related injury in November 2013.

After her application was denied initially and on reconsideration, Smith requested a hearing. On September 19, 2017, both Smith and an impartial vocational expert ("VE") appeared at the hearing. The ALJ gave an unfavorable decision to Smith on December 8, 2017, denying Smith's application for benefits. The ALJ's findings were as follows:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.

(2) The claimant has not engaged in substantial gainful activity since November 13, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: degenerative disc disease, right carpal tunnel syndrome, and rotator cuff disorder (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

(5) After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CAR 404.1567(b). Specifically, the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour day, and stand and/or walk for 6 hours in an 8-hour day. The claimant cannot climb ladders, ropes or scaffolds, and she can only occasionally climb ramps and stairs, stoop, crouch, kneel and crawl. The claimant can occasionally reach overhead with the right upper extremity. She must avoid all exposure to unprotected heights.

(6) The claimant is capable of performing past relevant work as a school bus monitor and housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(7) The claimant has not been under a disability, as defined in the

Social Security Act, from November 13, 2013, through the date of
this decision (20 CFR 404.1520(f)).

[ECF. No. 9-2, pp. 12-23]. Smith requested a review of this decision. On January 25, 2018, the Appeals

Council notified Smith that it received her request for review, and on November 19, 2018, the Appeals

Council issued its decision. The Appeals Council denied the request for review, explaining in part that

it reviewed the additional medical evidence submitted by Smith, but determined it did not affect the

disability decision. On January 23, 2019, Smith filed this Complaint seeking judicial review of the

Commissioner's decision. [ECF No. 1].  Both Smith and the Commissioner filed briefs [ECF No. 17;

ECF No. 20], and the Magistrate Judge issued a Report and Recommendation ("R&R") on January 21,

2020, recommending that the Commissioner's decision be affirmed. [ECF No. 24].  Smith filed

objections on February 4, 2020. [ECF No. 25].  The Commissioner replied to these objections on

February 13, 2020.  [ECF No. 28].

## **Standard of Review**

### I.    **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act,

which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial

evidence." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than

a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that

substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58

3

(4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157.

## II.     The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for

4

clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment

of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

<u>**Analysis**</u>

**I.      Listing 1.04A Analysis**

Smith's first objection is that the ALJ conducted an improper listing analysis, stating that the ALJ did not provide any findings of fact regarding Smith's conditions and whether she met Listing 1.04A, which pertains to disorders of the spine. Specifically, Smith points to an MRI in the medical records from January 2014 to argue that there was, in fact, evidence of nerve root compression, which is contemplated in the Listing and contrary to the ALJ's findings. Further, Smith argues that the ALJ did not properly consider the evidence showing compromise of a nerve root, as clarified in paragraph A of the Listing. Smith argues that this clarifying paragraph explains that the record need only show

7

neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising tests (sitting and supine). In response, the Commissioner argues that the MRI that Smith cites as objective evidence of nerve root impingement does not support such a finding.

In order to meet a listing, the plaintiff bears the burden of proving that she meets all of the medical criteria specified within that listing. *Lee v. Berryhill*, 5:17-0965-DCC, 2018 WL 3768515, at * 2 (Aug. 9, 2018)(citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). In other words, a plaintiff must show there was a twelve-month period during which the criteria in the relevant listing were met. *Id.* Listing 1.04 concerns disorders of the spine. It states:

> 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. *With*:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement in the lower back, positive straight-leg raising test (sitting and supine).

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, §1.04(A) (emphasis added). The MRI referenced by Smith notes "mild posterior deflection of the left L5 nerve root," but otherwise there is no indication on that record of nerve root impingement. Further, the MRI was reviewed by Dr. Alexander, who found that there was not definitive nerve root impingement. [Tr. at 552]. Smith argues that Listing 1.0(A) does not require the record to state that there is actual nerve root compression, but rather the record simply needs to show neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising tests. Smith has not provided support for this

interpretation or reading of the Listing. Nonetheless, even if the Listing does not require an actual finding of nerve root compression, Smith does not provide any evidence to suggest that this other medical criteria were met. Finally, the ALJ's opinion further notes that MRI examinations do not reveal any significant herniations, stenosis, or nerve root impingement, suggesting that the ALJ did not solely focus on whether or not the record stated there was nerve root impingement. This Court agrees with the Magistrate Judge that Smith has not met her burden of demonstrating that all medical criteria were met under Listing 1.04A during the relevant time period. Further, in reviewing the record and the ALJ's decision, it appears substantial evidence supports the findings therein regarding the Listing requirement. Accordingly, this objection is overruled.

## II.    Physician Opinions

Smith objects to the Magistrate Judge's recommendation that the ALJ properly evaluated the weight given to several of the treating physicians' opinions, as well as the consistency among the opinions, when considered as a whole. Smith concedes that the work restrictions found in several of the doctor's notes were for a limited period of time, or temporary in nature. However, Smith argues that the ALJ did not consider that Smith failed to recover from her work accident, and further, that the opinions immediately after the accident are consistent with later opinions found within the record. After considering many of the arguments Smith relies upon in her objections and reviewing the objective evidence, as well as the medical evidence of record, the Magistrate Judge determined that the ALJ provided adequate justification for providing the weight afforded to the opinions of several of the physicians, including treating physicians. The Commissioner argues that the ALJ provided ample support and explanation for the weight he afforded to the different physician opinions.

The Regulations contemplate considering and weighing all medical opinions included in a

claimant's case. The Commissioner may consider several factors, including the examining relationship, length of treatment relationship and frequency of examination, the nature and extent of treatment, and supportability of the medical opinion. 20 C.F.R. § 404.1527(c). The Regulations also provide that where a physician's opinion is not supported by clinical evidence, or if the opinion is inconsistent with other substantial evidence, it may be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Further, any other factors that may support or contradict an opinion should be considered. 20 C.F.R. § 404.1527(c)(6). In the face of persuasive contrary evidence, an ALJ has the discretion to give less weight to the opinion of a treating physician. *Johnson v. Barnhart*, 434 F.3d 650, 659 n. 5 (4th Cir. 2005).

Smith was seen at Doctor's Care, an urgent care facility, immediately after her work accident. The ALJ considered the fact that the providers at the urgent care facility noted she could return to work with certain restrictions, while further noting that these opinions were rendered in close proximity to the time in which she was injured due to the bus accident, and thus they appeared temporary in nature. The ALJ gave partial weight to the restrictions on postural activities found in this opinion, despite noting that the medical notes indicate that Smith's physical examination reflected normal strength and gait. Thus, it appears that the ALJ adequately considered the type of treating relationship existed, as well as the fact that these physicians were reviewing Smith's symptoms close in time to an acute injury and adequately supported the reasons giving for affording little weight to a portion of this opinion, while also providing partial weight to the postural restrictions.

Smith argues the ALJ erred in giving Dr. Nolan's opinion little weight to the extent it indicates greater sitting, standing, walking and postural limitations, because the ALJ did not explain which objective tests were inconsistent with Dr. Nolan's opinion. However, in considering Dr. Nolan's opinion,

the ALJ referenced medical records indicating Smith was able to ambulate without an assistive device, as well as more recent medical records reflecting no strength deficits or gait abnormalities, and that other notes indicate she exhibited a full range of motion and normal motor strength. Therefore, he did refer to objective evidence when explaining the weight afforded to this opinion. The ALJ also explained what he determined was an inconsistency in this opinion in that Dr. Nolan opined that Smith could stand and walk for less than 2 hours, sit for 2 hours while alternating walking and standing every hour, and not bend, stoop, or crouch, however he stated Smith could lift 50 pounds occasionally and 20 pounds frequently. Smith argues that elsewhere in his notes, Dr. Nolan references an antalgic gait. However, this does not necessarily negate that the fact that the ALJ looked at the records as a whole and determined that Dr. Nolan's opinion should be given little weight. Smith also argues that in reviewing the ALJ's decision, the Magistrate Judge did not consider Dr. Nolan's notes indicating treatment for back pain and leg pain, which Smiths argues would limit her ability to walk or stand. Indeed the ALJ gave a detailed explanation of his findings with respect to Dr. Nolan's opinion, including the fact that she had mild radiological studies, and he focused on what Smith's records routinely showed with respect to her physical capabilities. Thus, the ALJ's opinion is supported by substantial evidence found within the record that she was not as limited as alleged.

Smith objects to the ALJ's determination to give little weight to Dr. Patel's December 2014 opinion that she should remain out of work. The ALJ noted that it appears to be a temporary restriction. However, Smith argues that Dr. Patel's later April 2015 opinion, where he opined she could perform sedentary work should have been afforded more weight and the ALJ did not adequately support his decision to also afford this particular opinion little weight. To the contrary, the ALJ explained that later treatment notes do not support Dr. Patel's findings from this time period which suggest her gait

improved and she had full strength in her lower extremities. Further, the ALJ also considered the fact that despite opining that Smith was limited to sedentary work, Dr. Patel offered no specific functional limitations to support such a finding. The explanation by the ALJ adequately reflects that he considered Dr. Patel's opinion and the ALJ supported the weight afforded this opinion substantial evidence. Relatedly, Smith argues that Dr. Etikerentse's finding that Smith pain with prolonged standing and walking should have been given more weight because it is consistent with Dr. Nolan and Dr. Patel's findings. First, the ALJ found that the opinions of Dr. Nolan and Dr. Patel were not supported by the medical records and objective testing; thus, a reliance on the consistency of opinion with these two opinions is not persuasive. Second, the ALJ explained in his opinion that while Dr. Etikerentse made this finding in a June 2015 record, she did not set forth any accompanying functional limitations. The ALJ further explained that Dr. Etikerentse's own objective examinations were unremarkable, and that while this physician noted that Smith had some lower back tenderness, she did not exhibit cervical tenderness, she had negative straight leg tests, and full lumbar flexion. Accordingly, the ALJ determined that a notation by this same physician that she may have pain with prolonged standing and walking is not otherwise consistent with her own records.

Smith argues that the ALJ did not explain how he incorporated Dr. Aymond's opinion, which was afforded great weight, in the RFC. Likewise, Smith argues that the ALJ omitted Dr. Alexander's opinion that Smith could walk or stand "as tolerated" within the RFC. This Court is tasked with reviewing specific objections, and while it is unclear what Smith objects to with respect to the findings within the R&R and what further limitations should have been imposed, this Court has still reviewed the ALJ's decision with respect to these opinions. Dr. Aymond opined that Smith had a 5% lumbar spine impairment in March 2014 and could perform "limited duty" until April 15, 2014, at which time she

could perform full activities as tolerated. The ALJ adequately explains why he rejected the impairment rating given in March of 2014, in part because it is not expressed in terms of functional limitations. The ALJ also noted that Dr. Aymond explained that after a specific date, Smith could perform full activities as tolerated, suggesting that the "limited duty" restriction, which was not defined, was for a temporary time period. Thus, it appears that the ALJ explained that while he considered Dr. Aymond's opinion, Dr. Aymond did not provide any supporting details as to why Smith was restricted to limited duty temporarily. Additionally, given that the RFC does provide some limitation to standing and walking, and further, that Dr. Aymond indicated she could perform full activities after a certain date, it appears the ALJ incorporated this information when formulating the RFC.

Smith argues that the ALJ improperly rejects the opinion of Dr. Alexander as being based on subjective complaints. This Court first notes that the ALJ devoted three paragraphs to reviewing Dr. Alexander's opinions. A review of the decision reveals that the ALJ adequately considered that while Dr. Alexander opined in April 2014 that Smith could perform sedentary work, the objective examination shows that Smith's cervical pain was minimal, she had mild lumbar spine tenderness, and that she ambulated with a normal gait, as well as negative leg raise tests. Further, as considered previously, Dr. Aymond indicated that in April 2014 Smith could perform full activities as tolerated. A review of Dr. Alexander's notes reveal that he explained she could "currently" perform sedentary work. Later opinions by Dr. Alexander indicate Smith can perform light work with lifting not to exceed 20 pounds. With respect to Dr. Alexander's August 2014 impairment rating (0% for cervical spine and 7% for lumbar spine), the ALJ noted that these impairments were not expressed in terms of any functional limitations but indicated it showed minimal impairment and was likely not consistent with the RFC.

This Court's review of these portions of the ALJ's decision find that substantial evidence supports the ALJ's determination's with respect to these physician's opinions. In reviewing the objections regarding physician opinions as a whole, this Court finds that substantial evidence supports the ALJ's findings, and it appears that the ALJ did in fact consider the consistency of the opinions in this case. It is not within this Court's purview to re-weigh evidence when the ALJ adequately explains that the medical records and physical examinations did not support the level of impairment provided by some of the physicians, particularly when there was a lack of functional limitations with respect some physician opinions. Accordingly, after giving due consideration to Smith's objection regarding the weight attributable to the physician opinions, this Court agrees with the Magistrate Judge that the ALJ's decision is supported by substantial evidence. This objection is overruled.

## III.  Plaintiff's Subjective Symptoms

Smith argues that the ALJ improperly erred in evaluating her subjective symptoms by failing to address her testimony regarding her daily activities. In her objections, Smith's argument builds upon her prior two objections in that she argues that because the ALJ failed to properly consider a listing and failed to properly discuss and weigh all opinion evidence, the ALJ's statement that he considered the entire record in discounting Plaintiff's subjective complaints is inaccurate. The Commissioner argues that the ALJ provided a sufficient explanation of his analysis of Smith's subjective symptoms and whether medical evidence of record supported Smith's descriptions of her pain.

In Social Security Ruling 16-3p, the Social Security Administration explains that the intensity and persistence of a claimant's symptoms should be evaluated to determine whether these symptoms limit the ability to perform work-related activities.[3] In evaluating a claimant's subjective symptoms, an

---

[3] SSR 96-7p was rescinded and superceded by SSR 16-3p, which became effective on March 28, 2016.

ALJ must follow a two-step process: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p; *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or other symptoms). A claimant's own description of her symptoms is never, by itself, sufficient to establish a disability. SSR 16-3p.

First, contrary to Smith's objections, this Court finds that the ALJ appropriately discussed the evidence in this case. Smith's objections that the ALJ did not properly discuss the listing requirements and did not properly discuss the opinion evidence are overruled. Nonetheless, the Court has still considered whether the ALJ properly considered Smith's reports of subjective complaints relating to her impairments. In reviewing the decision, the ALJ discussed Smith's testimony regarding her daily activities. He further addressed her allegations of pain and whether the objective testing supports these allegations. For example, the ALJ considered Smith's allegations of arm pain and back pain but noted that the physical examinations reflect some ambulation issues but otherwise showed normal coordination, intact sensation, and no strength deficits. The ALJ also considered that Smith received generally conservative treatment, with no recommendation of surgical intervention. Within the decision, the ALJ discusses reports that at least one physician, Dr. Aymond, indicated that Smith had "self-limiting behavior" of her lower back and noted the presence of 5/5 Waddell's signs, including exaggerated pain behaviors. During testing related to her carpal tunnel syndrome complaints, the examiner noted that Smith demonstrated poor effort. In other words, contrary to Smith's argument, the ALJ provided a detailed review of Smith complaints, and explained that the objective testing and

medical records did not support the degree of limitations as alleged. Accordingly, this Court finds the ALJ's decision is supported by substantial evidence. This objection is overruled.

### Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court adopts the Magistrate Judge's recommendation [ECF No. 24]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina
March 23, 2020

s/ R. Bryan Harwell
R. Bryan Harwell
Chief United States District Judge